UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| TINA BRYAND, | § | CV No. 7:14-CV-23-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| MARTIN COUNTY, TEXAS, | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is a Motion for Summary Judgment filed by

Defendant Martin County, Texas ("Defendant" or "Martin County") (Dkt. # 12).

The Court held a hearing on the Motion on May 13, 2015.  At the hearing, Holly

Williams, Esq., represented Plaintiff Tina Bryand ("Plaintiff"), and Jamie Guidry,

Esq., represented Defendant.  After careful consideration of the supporting and

opposing memoranda and the arguments presented at the hearing, and for the

reasons given below, the Court **GRANTS IN PART AND DENIES IN PART**

Defendant's Motion for Summary Judgment.

<u>BACKGROUND</u>

This case arises out of Plaintiff's employment with Martin County, where she worked as a 911 dispatcher and jailer from 1990 to 2012. ("Bryand Dep.," Dkt. # 12-3, Ex. C at 12:21–22; Ex. F.) As the county's daytime 911 dispatcher, Plaintiff's duties included answering all calls on the 911 system reporting emergency and non-emergency situations, providing support to callers during emergency and traumatic events, dispatching the correct resources to emergency situations, performing records management, and entering data into state and national law enforcement databases. (Dkt. # 12-17, Ex. Q at 1.) As the daytime jailer, Plaintiff was responsible for supervising prisoners, performing pat-down searches of prisoners, and maintaining accurate arrest and identification records, among other duties. (<u>Id.</u> at 3.)

In 2004, Plaintiff began suffering from palindromic rheumatoid arthritis. (Bryand Dep. 16:15–17:3.) Plaintiff experiences episodes of acute joint swelling, warmth, and erythema in her hands and wrists that typically last between 12 hours and three to four days. (<u>Id.</u> 21:21–23:11; Dkt. 15-1 at 17.) Bryand was prescribed the steroid prednisone and pain medication, which she takes during flare-ups. (Bryand Dep. 18:9–16.) Bryand would sometimes wear a wrist brace

2

during flare-ups, and the condition would occasionally cause her to come to work late or take a day off.  (Id. 23:16–24:8.)

On January 25, 2011, Plaintiff received an official warning for violating the county's confidentiality policy.  (Dkt. # 12-7, Ex. P.)  Plaintiff, while not on duty, had called an emergency responder who was responding to a situation in which a citizen was shot and killed by Midland County police officers, inquiring into who had been shot.  ("Ingram Dep.," Dkt. # 15-3, Ex. 21 at 22:12–18, 25:17–26–10.)  The warning stated that a subsequent violation of similar seriousness could result in termination.  (Dkt. # 12-7, Ex. P.)

Plaintiff's job duties included entering and validating the county's data into the Texas Crime Information Center ("TCIC") and National Crime Information Center ("NCIC") databases, which house data regarding stolen property, missing and wanted persons, and sex offenders for use by law enforcement officials.  (Bryand Dep. 51:6–52:5; Ingram Dep. 37:7–24.)  She was also responsible for preparing for audits conducted by the Texas Department of Public Safety.  (Bryand Dep. 53:5–7.)  In an audit conducted on January 27, 2011, auditors found that "[t]he high number of incorrect and invalid records as compared to records checked indicates a serious problem which could lead to missed hits, false hits, or false arrests.  The problem is compounded by the fact that

3

records which were found to be incorrect have been validated by your department."
(Dkt. # 12-11, Ex. K at 7.)  In response, Plaintiff subsequently drafted a letter on
behalf of Martin County Sheriff John Woodward ("Woodward") that addressed the
deficiencies identified by the audit.  (Dkt. # 15-1, Ex. 6; Bryand Dep. 77:20–
78:10.)

Plaintiff was also responsible for submitting monthly equipment
checklist reports to the Permian Basin Regional Planning Commission ("PBRPC").
(Bryand Dep. 85:4–9.)  As of May 6, 2011, the PBRPC had not received reports
from Martin County since December 2010.  (Dkt. # 12-12, Ex. L.)  Plaintiff's
responsibilities also included submitting monthly reports to the Uniform Crime
Reporting ("UCR") program, which tracks reportable crimes and arrests.  (Ingram
Dep. 37:13–24.)  In 2010 or 2011, Plaintiff fell "several months" behind on the
UCR reports and required assistance from then-Deputy Sheriff Brad Ingram[1]
("Ingram") to bring the county's reports current.  (Id. 38:2–12.)

On May 4, 2012, Sheriff Woodward placed Plaintiff on paid
administrative leave following allegations that on two occasions, Plaintiff had
asked for and received prescription medications from other individuals while on

---

[1] During the period relevant to this action, Ingram was a Deputy Sheriff with
Martin County.  At the time of his deposition, he was serving as the County
Sheriff.

4

duty.  (Bryand Dep. 31:4–32:17; Ingram Dep. 59:25–60:14.)  Plaintiff admitted to the allegations, explaining that she had her own prescription but was not able to leave her dispatch station to retrieve it from home.  (Bryand Dep. 32:22–33:2.) Sheriff Woodward told Plaintiff that she would be placed on paid leave for one week, but when Plaintiff called Deputy Sheriff Ingram at the end of the week to ask if she was scheduled to work, Ingram told her that she was not.  (Id. 35:25– 36:22.)

When Plaintiff called again after the second week, Sheriff Woodward called her in to meet with him on May 16, 2012.  (Id. 37:8–17.)  Woodward told Plaintiff that he had discussed Plaintiff's situation with the county treasurer, and told Plaintiff to pick up a form with which she could seek disability benefits.  (Id. 38:5–8.)  Plaintiff contacted the treasurer, downloaded the forms, and took them to her doctor, who would not sign the forms until he could prove that Plaintiff was in fact disabled.  (Id. 38:9–17, 47:13–19.)  Plaintiff subsequently underwent a series of medical tests in an attempt to determine the cause of her flare-ups.  (Id. 26:1– 27–7.)

On July 19, 2012, Martin County Attorney James Napper ("Napper") sent Plaintiff a letter stating that Plaintiff had not provided medical documentation to support her absence from work since May 4, 2012.  (Dkt. # 12-5, Ex. E.)  The

letter set out three options: Plaintiff could (1) request unpaid medical leave for up to six months if Plaintiff could provide documentation of a medical condition that prevents her from working; (2) request to take her remaining vacation time, after which she would need to request medical leave or resign; or (3) resign immediately.  (Id.)  The letter further warned that absent a response from Plaintiff, she would be terminated for excessive absenteeism on August 9, 2012, and invited her to come to the courthouse to discuss her options further.  (Id.)

Plaintiff did not receive the letter until August 7, 2012, and sought an attorney to send a response letter requesting additional time to supply the requested documentation because Plaintiff's doctor was out of town.  (Bryand Dep. 42:2–16.) On August 22, 2014, Napper sent a letter to Frank McCallum, Plaintiff's attorney,[2] stating that August 24, 2012 would be Plaintiff's last paycheck, and that no medical documentation had been received.  (Dkt. # 12-6, Ex. F.)  On August 24, 2012, Plaintiff sent Defendant (1) a doctor's note stating that Plaintiff had an autoimmune disease and was undergoing tests and treatments and (2) the abstract of a study of asbestos-related autoimmune disease.  (Dkt. 12-7, Ex. F; Bryand Dep. 44:5–18.)  Plaintiff was terminated shortly thereafter.

---

[2] Plaintiff testified that she did not hire McCallum and that McCallum was not her attorney, but that she sought him out only for the purpose of responding to Napper with a "legal letter."  (Bryand Dep. 41:25–42:25.)

6

Plaintiff filed a Complaint in this Court on March 21, 2014, asserting that she was discriminated against on the basis of disability in violation of the Americans with Disabilities Act ("ADA"), on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, and on the basis of age in violation of the Texas Labor Code.  (Dkt. # 1 ¶¶ 23–47.)  Plaintiff seeks compensatory and punitive damages as well as attorneys' fees and costs.  (Id. ¶¶ 48–49.)  Martin County filed the instant Motion for Summary Judgment on March 2, 2015.  (Dkt. # 12.)  Plaintiff filed a Response on April 10, 2015 (Dkt. # 15), and Martin County filed a Reply on April 17, 2015 (Dkt. # 18).

<u>LEGAL STANDARD</u>

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>see also</u> <u>Meadaa v. K.A.P. Enterprises, L.L.C.</u>, 756 F.3d 875, 880 (5th Cir. 2014).  "Substantive law will identify which facts are material."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id.</u>

In seeking summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  <u>Celotex</u>

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial.  Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738 F.3d 703, 706 (5th Cir. 2013) (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012) (internal quotation marks omitted).

In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Kevin M. Ehringer Enters. v. McData Servs. Corp., 646 F.3d 321, 326 (5th Cir. 2011) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

DISCUSSION

I.    ADA Claims

Plaintiff's Complaint asserts that Martin County terminated Plaintiff's employment because it regarded her as disabled and failed to reasonably accommodate her physical impairment in violation of the ADA.  (Dkt. # 1 ¶¶ 23–36.)  Martin County argues that it is entitled to summary judgment on Plaintiff's ADA claims because Plaintiff was not qualified to perform the essential functions of her job and because Plaintiff did not request accommodation and testified that her condition did not affect her work.  (Dkt. # 12 at 12, 14.)  The Court will first address Plaintiff's discrimination claim, and will then discuss Plaintiff's claim for failure to provide reasonable accommodation.

A.    Discrimination on the Basis of Disability

Under the ADA, it is unlawful to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  A "qualified individual" is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position." Id. § 12111(8).  The term "disability" means "a physical or mental impairment that

9

substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment."  Id. § 12102(1). An individual is regarded as having such an impairment "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  Id. § 12102(3)(A).

A plaintiff may establish a claim of discrimination under the ADA either by presenting direct evidence or by presenting indirect evidence under the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Seaman v. CSPH, Inc., 179 F.3d 297, 300 (5th Cir. 1999).  "[D]irect evidence includes any statement or written document showing a discriminatory motive on its face."  Portis v. Nat'l Bank of New Albany, Miss., 34 F.3d 325, 328 (5th Cir. 1994).  In determining whether verbal statements constitute direct evidence, courts look to "whether the comments are (1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision."  Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C., 778 F.3d 473, 475 (5th Cir. 2015).  If

a plaintiff presents direct evidence of discrimination, "the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." Id.

    1.    Qualified Individual

Martin County first argues that Plaintiff was not a "qualified individual" subject to protection under the ADA. Martin County points to evidence indicating "a progressive decline in [Plaintiff's] work performance in the years leading up to her termination," including Plaintiff's failure to file monthly reports and the audit indicating a serious problem with recordkeeping in the TCIC and NCIC databases.[3] (Dkt. # 12 at 12–13.) The County further argues that

---

[3] Martin County also cites the affidavit of Sheriff Woodward, in which Woodward attests that "Tina Bryand stated to me on numerous occasions . . . that she knew she had performance problems and those problems could be related to medical problems she was having." (Dkt. # 12-10, Ex. J.) Plaintiff objects that the affidavit is not competent summary judgment evidence. "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits may be used to support summary judgment, despite the fact that affidavits are often admissible at trial as hearsay, on the theory that the evidence may ultimately be presented at trial in admissible form. Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006). Here, however, Defendant was unable to produce Woodward for deposition, and Plaintiff's two attempts to subpoena him were unsuccessful. (Dkt. # 15 at 7.) It thus appears that Woodward would be unavailable to testify to the statements in his affidavit at trial, and the Court will therefore not consider his affidavit on summary judgment.

Plaintiff's deposition transcript clearly shows that Plaintiff lacked the communication skills necessary for a 911 dispatcher.  (Id. at 13.)

"'Qualified' is a term of art in the ADA context; an individual is 'qualified' if 'with or without reasonable accommodation, she can perform the essential functions of the employment position that such individual [holds or] desires.'"  Rodriguez v. ConAgra Grocery Prods. Co., 436 F.3d 468, 477 n.32 (5th Cir. 2006) (quoting 42 U.S.C. § 12111(8)).  Plaintiff has submitted evidence, in the form of testimony from Deputy Sheriff Ingram, that Plaintiff's work performance was acceptable, he felt safe having Plaintiff handle emergencies, and Plaintiff stayed on topic and capably answered questions in dispatch communications. (Ingram Dep. 27:19–29:17.)  Bryand also testified that her medical condition did not affect her job performance, and the record includes no indication of performance issues in the period between 2004, when she began suffering from the condition, and 2011.  (Bryand Dep. 102:23–103:2.)

This evidence, taken in the light most favorable to Plaintiff as the non-moving party, is sufficient to create a genuine issue of material fact as to whether Plaintiff was a qualified individual under the ADA.  While the record includes instances of lapses in Plaintiff's performance in 2011 and 2012, Martin County has not shown that she was unable to perform the essential functions of her

12

position as a matter of law.  Plaintiff's occasional need to come in late or take a day off during a flare-up is not the sort of absence that would prevent her from being able to perform the essential functions of her position.  Further, despite Martin County's suggestion to the contrary, Plaintiff's ability to clearly communicate answers during her 2015 deposition is not evidence of her ability to communicate as a dispatcher in 2011 and 2012 prior to being placed on leave.[4]

Martin County also argues, however, that Plaintiff is judicially estopped from showing she is qualified because she sought disability benefits after being placed on administrative leave.  (Dkt. # 12 at 17.)  The Supreme Court has held that an ADA plaintiff who has previously filed for a total disability claim under the Social Security Disability Insurance program, which requires that a person be unable to work, "must proffer a sufficient explanation" for the apparent inconsistency with the requirement that she show she is a "qualified individual" under the ADA.  Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999).  Here, Plaintiff began to fill out forms for disability benefits under the Texas County & District Retirement System Act, Tex. Gov't Code  Ann. § 841.001 et

---

[4] The Court further notes that Deputy Sheriff Ingram testified that Plaintiff's difficulty communicating began after her employment with the county had ceased, possibly due to suffering from a stroke or "ministrokes."  (Ingram Dep. 54:1–16, 56:14–57:5.)  Martin County's argument that Plaintiff's deposition testimony is evidence of her inability to clearly communicate, an essential function required of a 911 dispatcher, is thus both meritless and misleading.

seq., which requires that the applicant be "mentally or physically incapacitated for any gainful occupation" and that "the incapacity is likely to be permanent." § 844.303(b)(2).  Plaintiff never filed her claim, however, and thus never represented that she was incapacitated for any gainful occupation or otherwise disabled.  She is therefore not judicially estopped from claiming that she is a qualified individual under the ADA, and the evidence in the record establishes a genuine dispute of material fact as to whether she is so qualified.

2.    <u>Direct Evidence of Discrimination</u>

Plaintiff has also provided sufficient evidence to create a dispute of material fact as to whether she was discriminated against on the basis of her perceived disability.  Plaintiff has presented evidence that Sheriff Woodward originally placed Plaintiff on one week of paid administrative leave after finding out that Plaintiff, while on duty, had asked for and received others' prescription medications on two occasions.  (Bryand Dep. 31:4–32:17; Ingram Dep. 59:25–60:14.)  After the first week, however, Plaintiff was told she had not been put back on the schedule.  (Bryand Dep. 37:8–17.)  Deputy Sheriff Ingram, who was in charge of scheduling dispatchers, testified that he was told to take Plaintiff off of the dispatch schedule "'til I was told differently."  (Ingram Dep. 60:23.)  When Plaintiff called after the second week, she was told to meet with Sheriff

Woodward.  (Bryand Dep. 37:8–17.)  During their meeting, Woodward told her to

he had discussed the matter with the county treasurer, and that Plaintiff needed to

contact the treasurer to pick up forms that would allow Plaintiff to apply for

disability benefits.[5]  (Id. 38:5–8.)

Woodward's instruction to Plaintiff that she needed to file for

disability benefits, after placing her on administrative leave and refusing to put her

back on the dispatch schedule, is direct evidence that Woodward regarded Plaintiff

as disabled.  Defendant argues, however, that even if Plaintiff was regarded as

disabled, placing Plaintiff on paid administrative leave was not an adverse

employment action under the ADA.  (Dkt. # 18 at 2.)  "[A]dverse employment

actions consist of ultimate employment decisions such as hiring, firing, demoting,

promoting, granting leave, and compensating."  Thompson v. City of Waco, Tex.,

764 F.3d 500, 503 (5th Cir. 2014) (internal quotation marks omitted).  Under Fifth

Circuit precedent, placing an employee on paid leave is not an adverse

employment action.  McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir.

2007).  But see Timmons v. General Motors Corp., 469 F.3d 1122, 1128 (7th Cir.

2006) (holding than involuntarily placing an employee on paid disability leave was

---

[5] Additionally, Cynthia O'Donnell ("O'Donnell"), the county treasurer, testified
that Sheriff Woodward told her that Plaintiff was having medical problems with
her hands around the time that Plaintiff contacted O'Donnell asking what she
needed to do to file for disability.  ("O'Donnell Dep.," Dkt. # 15-3 at 26:18–29:5.)

an adverse employment action because the action materially reduced the
employee's responsibilities).

Here, however, Plaintiff was in fact terminated, although not until
August 24, 2012.  Plaintiff did not return to work between May 16, 2012 and the
date she was discharged, believing that she would not be permitted to return to
work after her conversation with Sheriff Woodward.  (Bryand Dep. 38:5–17,
44:19–45:7.)  The three options presented in Napper's July 19, 2012 letter to
Plaintiff warning that she would be terminated for "excessive absenteeism" did not
include the option to return to work.  (See Dkt. # 12-5, Ex. E.)  The letter also
apparently ignored the fact, established by Plaintiff's uncontradicted testimony,
that the reason for Plaintiff's absence was that Sheriff Woodward had placed her
on administrative leave.  (See Bryand Dep. 31:4–32:17.)

Given the circumstances surrounding Plaintiff's termination,
Woodward's instruction that Plaintiff seek disability benefits after putting her on
administrative leave and refusing to put her on the dispatcher schedule is direct
evidence that he regarded her as disabled and terminated her employment on the
basis of her perceived disability.  Applying the direct evidence factors from
Etienne, 778 F.3d at 475, Woodward's instruction was related to Plaintiff's
disability; was made approximately two months prior to the first letter warning that

16

Plaintiff would be terminated, and just over three months prior to her termination; was made by a person with authority to fire Plaintiff; and was related to the decision to terminate Plaintiff—Woodward's instruction was made in response to Plaintiff's inquiries into whether she could go back to work after being placed on leave, and Plaintiff's subsequent termination was a direct result of having been placed on leave.

In light of this evidence, Martin County must show by a preponderance of the evidence that the same decision would have been made regardless of Plaintiff's perceived disability. See Etienne, 778 F.3d at 475. To prevail on summary judgment, it "must do more than merely identify a legitimate basis for its decision—it must show that any reasonable jury would conclude that it would have made the same decision absent the discrimination." Id. at 477. Martin County argues that Plaintiff was placed on administrative leave for performance problems, and that she was terminated after failing to provide medical documentation of her condition. (Dkt. # 12 at 6, 13; Dkt. # 18 at 4.) While the record includes evidence of lapses in Plaintiff's performance in early 2011, the record also includes testimony from Deputy Sheriff Ingram that Plaintiff's work performance was acceptable and that he did not notice "a progressive decline" in her ability to perform dispatching tasks. (Ingram Dep. 31:16–21, 33:1–11.)

17

Additionally, the Martin County Employee Policy Manual in effect at the time of Plaintiff's termination required that an employee "be advised that her performance does not meet required standards before being terminated for cause," and that a supervisor "must take reasonable action to correct the shortcoming before it becomes serious enough to warrant discharge."  (Dkt. # 15-2, Ex. 18 at 5.) The only records of county action related to Plaintiff's performance prior to her termination are the written warning for violating the county's confidentiality policy in January 2011 and a warning for being tardy in 2000.  (Dkt. # 12-16, Ex. P.) Notably, all of the documented issues with Plaintiff's performance occurred more than a year before she was placed on administrative leave in May 2012 and subsequently discharged in August 2012.[6]  Plaintiff has also submitted written warnings issued to other dispatchers and jailers during the relevant time period, indicating that the Sheriff's office had a practice of documenting and addressing employee performance issues when they did occur.  (See generally Dkt. # 17.)

This evidence is more than enough to establish a genuine dispute of material fact as to whether Martin County would have terminated Plaintiff regardless of her perceived disability.  As a result, Martin County is not entitled to

---

[6] The warning for violating the county's confidentiality policy, the audit documenting recordkeeping deficiencies, and the tardiness in filing various monthly reports all occurred in either 2010 the first half of 2011.  (See Dkt. # 12-7, Ex. P; Dkt. # 12-11, Ex. K at 7; Dkt. # 12-12, Ex. L; Ingram Dep. 38:2–12.)

judgment as a matter of law on Plaintiff's claim for discrimination in violation of the ADA, and the Court **DENIES** Martin County's Motion for Summary Judgment on this claim.

      B.    <u>Reasonable Accommodation</u>

      Plaintiff also alleges that Martin County failed to accommodate her disability.  Under the ADA, an employer discriminates against an employee if it fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A).   To establish a claim for failure to accommodate, a plaintiff must show that "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations."  <u>Neely v. PSEG Texas, Ltd. P'ship.</u>, 735 F.3d 242, 247 (5th Cir. 2013) (quoting <u>Feist v. La. Dep't of Justice, Office of the Att'y Gen.</u>, 730 F.3d 450, 452 (5th Cir. 2013)).

      "Because the ADA requires employers to accommodate the limitations arising from a disability, and not the disability itself, an employee seeking to assert a disability claim must produce evidence that the employer knew not only of the employee's disability, but also of the physical or mental limitations

arising therefrom." Seaman v. CSPH, Inc., 179 F.3d 297, 300 (5th Cir. 1999)

(citations omitted).  In other words, to prove discrimination, "an employee must

show that the employer knew of such employee's substantial physical or mental

limitation." Taylor v. Principal Fin. Grp., 93 F.3d 155, 163 (5th Cir. 1996).

Further, "[i]f the employee fails to request an accommodation, the employer cannot

be held liable for failing to provide one." Id. at 165.

   Here, Plaintiff has not submitted evidence establishing a genuine

dispute of material fact as to whether Plaintiff requested any accommodation.

Plaintiff testified that she never requested any accommodation for her condition

while employed with Martin County.  (Bryand Dep. 23:12–15.)  This is consistent

with her testimony that she "didn't consider it a disability.  It was a medical

condition causing an auto-immune problem.  It didn't affect my job."  (Id. 14:17–

19.)  If Plaintiff did not think her condition affected her work, it makes sense that

she would not ask for accommodation.

   Plaintiff argues that her requests for time off was a request for

accommodation.  (Dkt. # 15 at 13.)  In her deposition, Plaintiff answered

affirmatively when asked whether she had ever requested time off because of the

condition, but clarified that "[i]t wasn't asking off.  It was maybe being a little bit

late . . . . Maybe once a month, maybe twice, and sometimes not at all a month, you

know." (Id. 23:16–25.)  Even if Plaintiff in fact requested time off to

accommodate her condition, there is no evidence that Martin County refused to

grant her the time off or in any way penalized her for taking the time off.

Additionally, there is no evidence that her supervisors knew of any substantial

limitation caused by her condition—indeed, Plaintiff herself did not view her

condition as substantially limiting her work duties.

There is thus no genuine dispute of material fact as to whether Martin

County failed to make reasonable accommodations for Plaintiff's known

limitations, and Martin County is entitled to judgment to a matter of law on

Plaintiff's claim that Martin County failed to accommodate her disability.  The

Court therefore **GRANTS** summary judgment for Martin County on this claim.

II.     Sex Discrimination Claim

Under Title VII, it is unlawful "to fail to hire or to discharge any

individual, or otherwise discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such

individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  The "ultimate question" in every

Title VII case is whether the defendant intentionally discriminated against the

plaintiff because of a protected characteristic.  St. Mary's Honor Ctr. v. Hicks, 509

U.S. 502, 511 (1993); Roberson v. Alltel Info. Serv., 373 F.3d 647, 651 (5th Cir. 2004).

When a discrimination claim is supported by circumstantial evidence, the plaintiff must show that she (1) is a member of a protected class, (2) was qualified for the position she sought or held, (3) suffered an adverse employment action, and (4) was replaced by someone outside of the protected group treated less favorably than another similarly situated employee outside of the protected group. McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). Adverse employment actions "include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." Id. at 559.

If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to provide a non-discriminatory reason for the action. Id. at 562–63. If the employer meets its burden, the burden then shifts back to the plaintiff to show an issue of fact as to whether the employer's proffered reason is pretextual. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 345 (5th Cir. 2007). "To carry this burden, the plaintiff must rebut each non-discriminatory or nonretaliatory reason articulated by the employer." McCoy, 492 F.3d at 557.

Only the fourth prong of the prima facie case—whether Plaintiff was replaced by or treated less favorably than a similarly situated employee outside of

the protected group—is at issue here.[7]  Plaintiff argues that she has established a

prima facie case for sex discrimination because Chance Ranier ("Ranier") and

Misti Thigpen Hayes ("Hayes") replaced her as daytime dispatchers and jailers.

(Dkt. # 15 at 16.)  The record, however, shows that Ranier was hired as a deputy

sheriff, and Hayes was Plaintiff's replacement.  (See Bryand Dep. 39:12–19

(stating that Ranier was "already on as a deputy" and "Misty was, also,

dispatching" when she met with Sheriff Woodward on May 16, 2012); Ingram

Dep. 47:4–13 ("Misty . . . was a part-time dispatcher.  And I believe after Ms.

Bryand's departure she became full-time."), 72:11–18 (stating that Ranier "became

a deputy" in June 2012 and that "I think he's the one that took my position when I

left"), 98:13–19 ("Q: When you were told to take Ms. Bryand off the schedule,

who replaced her?  A: I believe Missy Thigpen was working part-time and I think

she moved into that slot, best I can remember.  Misty, I think, was her name

instead of Missy."), 99:23–25 ("Q: And do you know—who would you consider

[Bryand's] permanent replacement?  A: I think Misty Thigpen.").)

---

[7] In a Title VII discrimination action, the plaintiff can show that she is qualified for
the position for the purpose of establishing a prima facie case of discrimination by
demonstrating that "objective employment qualifications have been met."  Medina
v. Ramsey Steel Co., Inc., 238 F.3d 674, 681 (5th Cir. 2001).  Martin County does
not argue that Plaintiff, who worked for the county as a dispatcher and jailer for
over 20 years, did not have the objective qualifications required for her position.

Because Hayes is also a female, there is no dispute of material fact as to whether Plaintiff was replaced by someone outside of the protected class.  As a result, Plaintiff has failed to establish a prima facie case of discrimination on the basis of her sex, and Martin County is entitled to judgment as a matter of law.[8] The Court therefore **GRANTS** summary judgment to Martin County on Plaintiff's claim for sex discrimination.

III.   Age Discrimination Claim

Under the Texas Commission on Human Rights Act ("TCHRA"), an employer commits an unlawful employment practice if the employer fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment because of the individual's age.  Tex. Lab. Code § 21.051.  "Section 21.051 is substantively identical to its federal equivalent in Title VII," with the exception that federal law protects age under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, which employs an

_____

[8] Plaintiff also suggests in passing that she was treated less favorably than male dispatchers and jailers because they were paid more than she was.  (Dkt. # 15 at 16.)  Plaintiff has submitted no evidence, however, that these male employees were similarly situated to her.  The record instead shows that Plaintiff was paid salary while the male dispatchers, who worked night and weekend shifts, were paid hourly wages that included overtime and shift differential.  (Bryand Dep. 57:1–58:17.)  Plaintiff is therefore unable to support a prima facie case of sex discrimination on the basis of disparate pay.

analysis similar to the approach under Title VII.  Quantum Chem. Corp. v.
Toennies, 47 S.W.3d 473, 475 & n.2 (Tex. 2001); Tex. Lab. Code § 21.001 ("The
general purposes of this chapter are to provide for the execution of the policies of
Title VII of the Civil Rights Act of 1964 and its subsequent amendments . . . .").
"[A]n unlawful employment practice is established when the complainant
demonstrates that . . . age . . . was a motivating factor for an employment practice,
even if other factors also motivated the practice . . . ."  Tex. Lab. Code § 21.125(a).

To demonstrate an age discrimination claim based on circumstantial
evidence, the plaintiff must show that he (1) is a member of the protected class;
(2) was qualified for the position he sought or held; (3) suffered an adverse
employment action; and (4) was either replaced by someone outside the protected
class, replaced by someone younger, or otherwise discharged because of his age.
Rachid v. Jack In The Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004).  Adverse
employment actions include "ultimate employment decisions such as hiring,
granting leave, discharging, promoting, and compensating."  McCoy v. City of
Shreveport, 492 F.3d 551, 559 (5th Cir. 2007).

If the plaintiff establishes a prima facie case, the burden of production
shifts to the employer to provide a non-discriminatory reason for the action.  Id. at
562–63.  If the employer meets its burden, the burden then shifts back to the

plaintiff to show an issue of fact as to whether the employer's proffered reason is pretextual.  Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 345 (5th Cir. 2007).  Under the TCHRA, the plaintiff must show either that the reason stated by the employer was a pretext for discrimination, or that the employer's reason, while true, was only one reason for its conduct, and that discrimination was also a motivating factor.  Reed v. Neopost USA, Inc., 701 F.3d 434, 439–40 (5th Cir. 2012).

Only the fourth prong of the prima facie case is at issue here.[9] Plaintiff argues that she was replaced by Ranier and Hayes, both of whom were "significantly younger."  (Dkt. # 15 at 16.)  As discussed above, the record shows that Hayes, not Ranier, replaced Plaintiff.  There is no evidence in the record, however, of Hayes's age.  The only record evidence possibly related to Hayes's age is Plaintiff's testimony that "I was replaced by a younger generation."  (Bryand Dep. 14:16.)  When asked who had replaced her, however, Plaintiff responded that she "couldn't tell you information after I left," but that she had been told "[f]ive people took over my job."  (Id. 67:11–18.)  Given Plaintiff's testimony that she did not know who had replaced her and that five unnamed persons had assumed her

---

[9] Plaintiff is 52 years old, and thus was over 40 years old during the relevant time period.  (Bryand Dep. 8:21–22.)  The TCHRA protects individuals 40 years and older from age discrimination.  Tex. Lab. Code § 21.101.

responsibilities, her statement that she was replaced by an unspecified "younger generation" cannot be fairly read to refer to Hayes.

The evidence in the record, taken in the light most favorable to Plaintiff as the non-movant, is thus insufficient to establish a genuine dispute of material fact as to whether Hayes was outside of the protected class.  As a result, Plaintiff has failed to establish a prima facie case for age discrimination, and Martin County is entitled to judgment as a matter of law.  The Court therefore **GRANTS** summary judgment for Martin County on Plaintiff's claim for age discrimination.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Martin County's Motion for Summary Judgment (Dkt. # 12.) Specifically, the Court **DENIES** summary judgment on Plaintiff's claim that she was terminated on the basis of her perceived disability, and **GRANTS** summary judgment on her claims for failure to provide reasonable accommodation, discrimination on the basis of sex, and discrimination on the basis of age.

27

**IT IS SO ORDERED.**

**DATED:** Midland, Texas, August 20, 2015.

David Alan Ezra
Senior United States District Judge